Charles **MASINTON**, d/b/a Charlie's,
Plaintiff-Appellee,

v.

James P. **DEAN**, Jr. and Olive P. Dean,
Defendants-Appellants.

No. 81CA0021.

Colorado Court of Appeals,
Div. I.

Dec. 30, 1982.

Victor A. Wallace, LaVeta, for plaintiff-appellee.

Martin, Knapple, Humphrey & Tharp, Joel C. Maguire, Boulder, for defendants-appellants.

STERNBERG, Judge.

Defendants appeal a judgment holding them individually liable for the debt of a corporation. We reverse.

The testimony, at a trial to the court, established that defendant Olive P. Dean (Olive) and her husband, James Dean, Sr., now deceased, operated a restaurant called Harry's Steak House. The restaurant was owned by the Dean-King Corporation, a closely held corporation formed one month prior to purchasing it. Olive and her husband were the sole officers and shareholders. Evidence was introduced that the corporation was in good standing at all relevant times. Plaintiff sold grocery products to the restaurant, which were paid for by checks imprinted with "Dean-King Corporation d/b/a Harry's Steak House, Inc." in the upper left corner.

About two years after starting the business, Mr. Dean became ill, and bills owing to plaintiff remained unpaid. Plaintiff alleged that defendant James P. Dean, Jr. (James, Jr.), who was neither a shareholder, officer, nor director of the corporation, oral-

ly promised to pay the debt of the restaurant if plaintiff would take no action to collect for ten days. James, Jr., denied making this promise.

Plaintiff sued Olive to collect $10,880.03, arguing that he had no knowledge that he was dealing with a corporation and should therefore be able to look to Olive individually. He also joined James, Jr., contending that he should be liable under his promise because plaintiff's forebearance in seeking collection removes the promise from the statute of frauds.

The trial court found that plaintiff dealt with the Deans in their individual capacities and that plaintiff was not informed that the purchases were made by the Deans as agents for the corporation. It also found that plaintiff's forebearance from seeking to collect the debt constituted consideration for the promise of James, Jr., to pay the debt, thus removing it from the statute of frauds.

■ The essential facts are either undisputed or, where disputed, we accept the findings of the trial court. Whether those facts were such as to make defendants individually liable is a question of law and we are not bound by the trial court's conclusions. *Maltby v. J.F. Images, Inc.,* 632 P.2d 646 (Colo.App.1981). Our conclusion on this issue differs from that reached by the trial court.

## I.

Corporate existence begins upon the issuance of the certificate of incorporation. Section 7–2–104, C.R.S.1973 (1982 Cum. Supp.); *Humphreys v. Mooney,* 5 Colo. 282 (1880). By filing a certificate of trade name, the corporation acquired the right to do business under that name, and was liable to the same extent as if the business were transacted under its corporate name. Sections 7–71–101(2) and 7–71–101(4), C.R.S. 1973 (1982 Cum.Supp.); *Smith v. Stubbs,* 16 Colo.App. 130, 63 P. 955 (1901). Directors and officers have authority by statute to exercise the powers of the corporation. Section 7–5–101(1), C.R.S.1973 (1982 Cum. Supp.) and § 7–5–115(2), C.R.S.1973; *Dines*

*v. Harris,* 88 Colo. 22, 291 P. 1024 (1930). Therefore, there can be no question that Olive had authority to transact business for the corporation and that the corporation was authorized to act as such.

■ As an individual acting within the scope of her authority for the corporation, Olive could be held liable only if she was acting for an undisclosed principal. *Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 421 P.2d 735 (1966). Plaintiff sent his bills to "Jimmy Dean Steak House" (following a change in the name of the restaurant) and received payment by checks clearly bearing the name of the corporation. The fact that the Deans' signatures did not reveal their capacity as officers is not dispositive. In *Fink, supra,* the court held that the addition of words such as "agent" was not controlling, the question being whether the principal is identified by considering the entire contract. We conclude that a consistent practice of paying for goods with checks that bear the name of the corporation was sufficient to identify the principal.

Both parties rely on *Conner v. Steel, Inc.,* 28 Colo.App. 1, 470 P.2d 71 (1970) to support their contentions. In *Conner, supra,* we reiterated the rule that an agent is personally liable when purchasing goods for an undisclosed principal. There, the issue was whether the plaintiff had notice that the principal was a corporation and not a partnership. Addition of the word "Inc." to checks when the parties had previously dealt as a partnership was not deemed sufficient. Here, in contrast, there were no previous dealings between the parties. Thus, the use of corporate checks was sufficient.

■ As stockholders in the corporation, the Deans could be held personally liable for corporate obligations under the "alter ego" doctrine if the corporate entity was used as a mere instrumentality for transacting their own affairs, if there was such unity of interest that the separate personalities no longer exist, and if to adhere to the doctrine of corporate entity would promote injustice or protect fraud. *Rosebud Corp.*

*v. Boggio,* 39 Colo.App. 84, 561 P.2d 367 (1977). There was no such evidence presented.

## II.

James, Jr. argues that he cannot be held on his alleged oral promise to pay the debt because it was a special promise to answer for the debt of another and, thus, was unenforceable under § 38–10–112(1)(b), C.R.S. 1973 (1982 Repl.Vol. 16A). We agree.

 The trial court's finding that the promise was made, being based on conflicting evidence, may not be disturbed on appeal. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

An agreement is void, unless in writing, if it is a promise to answer for the debt of another. Section 38–10–112(1)(b), C.R.S. 1973 (1982 Repl.Vol. 16A); *Cramblit v. Chateau Motel, Inc.,* 28 Colo.App. 213, 472 P.2d 183 (1970). The trial court found that it was such a promise, but that it was not void because it was supported by adequate consideration, to wit: refraining from instituting collection proceedings for a ten-day period.

A promise is within the statute when the main thrust of it is to act as a guarantor or surety of a debt for which a third party continues to be primarily liable. *Cramblit v. Chateau Motel, Inc., supra.* Here, the terms of the promise as testified to by plaintiff brings it within the statute. Such a promise is enforceable only if one of the parties has fully performed the acts required under the agreement. *Schust v. Perington,* 169 Colo. 39, 453 P.2d 599 (1969). And, the part performance which will withdraw such a promise from the statute must consist of acts which it clearly appears that the performing party would not have done in the absence of the agreement. *Brown v. Johanson,* 69 Colo. 400, 194 P. 943 (1920).

Here, the alleged acts were forebearance from attempting to collect the debt for ten days. Without evidence that plaintiff would not ordinarily have delayed in collecting the debt, that delay is not the sort of part performance which would remove the oral promise from the statute of frauds. Here, the record shows that plaintiff did not institute collection proceedings for some three months, and there is nothing in the record indicating in what way plaintiff was prejudiced by the ten day delay. What is done as part performance must be consistent with no theory other than the oral agreement, otherwise it does not tend to prove the latter. *See Knoff v. Grace,* 68 Colo. 527, 190 P. 526 (1920). Thus, the alleged promise cannot be enforced upon these facts.

The trial court erred when it concluded that consideration which would otherwise be adequate to support a bilateral promise removed this promise from the statute of frauds.

Judgment reversed.

COYTE and BERMAN, JJ., concur.